OPINION OF THE COURT
Armando Montano, J.
Defendant is charged by superseding information with criminal trespass in the third degree (Penal Law § 140.10 [a]), use of parks; hours of operation (Rules of City of NY Dept of Parks and Recreation [56 RCNY] § 1-03 [a] [3]); and trespass (Penal Law § 140.05).
Defendant moves for an order (1) dismissing counts one and three, Penal Law § 140.10 (a) and Penal Law § 140.05, respectively, as facially insufficient; (2) suppressing any and all statements taken from defendant for which proper notice was given, or in the alternative, granting a Huntley ¡Dunaway hearing; (3) precluding the People from introducing at trial any evidence of defendant’s prior convictions and/or bad acts; and (4) granting defendant the right to make additional pretrial motions and the right to amend and/or supplement this motion if made necessary or appropriate by the People’s future disclosure.
By decision and order dated December 10, 2015, this court denied as moot the branch of defendant’s motion seeking dismissal of counts one and three as facially insufficient. This court granted defendant leave to file a motion to dismiss the superseding information filed on October 16, 2015. In that same decision and order, this court (1) granted defendant a combined Huntley ¡Dunaway hearing to determine the admissibility of noticed statements and (2) referred defendant’s Sandoval motion to the trial judge.
The factual allegations in the accusatory instrument sworn to by the deponent, Police Officer Karyn Soto, read as follows:
“Deponent states that [on or about September 14, 2015 at approximately 8:53 PM at opposite 1133 Morris Avenue, County of Bronx, State of New York], inside of Mott Playground, deponent observed defendant walk into said playground, which is surrounded by a fence, and that deponent observed defendant enter said playground through a gate that had immediately adjacent to it a *986 conspicuously posted sign stating, in sum and substance: PARK CLOSES AT DUSK.
“Deponent further states that, deponent asked defendant whether defendant had been given permission by the Park’s Commissioner to enter and remain inside of said playground during the hours which it was closed to the public and the defendant stated, in sum and substance: NO I DON’T HAVE PERMISSION TO BE IN THE PLAYGROUND.
“Deponent further states that the sun had set and nightfall had begun.
“Deponent further states that, the above location is a New York City Public Park, and that she is a New York City Police Officer, and as such she is the lawful custodian of said premises and the defendant did not have permission or authority to enter or remain on said premises after the park was closed to the public.”
Defendant filed the instant motion on January 15, 2016 wherein he seeks the same relief as previously requested in his first motion filed on October 9, 2015. A review of both motions reveals that they are identical. Defendant argues that the trespass charges are facially insufficient because they fail to allege that (1) he knowingly entered or remained in the park unlawfully, (2) he was in the park after dusk, and (3) the park was fenced or enclosed in a manner to exclude intruders. It does not appear that defense counsel reviewed any of the new allegations contained in the superseding information prior to filing the instant motion since two out of the three defects identified in the original complaint were cured by the filing of the superseding information. This court will only address defendant’s relevant arguments pertaining to whether the superseding information alleges sufficient facts to establish that defendant was in the park after dusk.
Defendant asserts that in order for his presence in the park to be unlawful, he must be in the park after dusk. In support, defendant relies upon People v Crayton (19 Misc 3d 1129[A], 2008 NY Slip Op 50937[U] [Crim Ct, Richmond County 2008]), a “strikingly analogous case,” which explains precisely why the instant accusatory instrument does not sufficiently establish that he was in the park after dusk. Defendant avers that the U.S. Department of Commerce’s National Oceanic and Atmospheric Administration identifies three stages of dusk, to wit: civil dusk, nautical dusk, and astronomical dusk. Each stage of *987 dusk is defined by the solar elevation angle, the sun’s geometric center relative to the horizon. Defendant argues that the accusatory instrument is devoid of any allegations that provide reasonable cause to believe that he was in the park during any of the three stages of dusk. As in Crayton, defendant points out that the deponent “officer does not state whether, at the time of his arrest, there was sufficient light to perform outdoor activities, whether objects in the vicinity were distinguishable from one another, or whether the sun still illuminated the sky.” (Defendant’s mem of law at 10.) Without these allegations, defendant avers that the deponent officer’s allegation that it was dusk is conclusory, rendering the trespass charges facially insufficient.
In opposition, the People contend that deponent officer’s allegation that “the sun had set and nightfall had begun” sufficiently establishes that it was dusk at the time defendant was observed in the park. The People note that defendant concedes in his motion papers that civil twilight, the first stage of dusk, ends after sunset, and dusk is defined as “the darker part of twilight.” By defendant’s own admissions, the fact that the sun had set means that twilight had ended and dusk had begun. Furthermore, the People contend that the fact that nightfall had begun establishes that it was dark outside. Finally, the People assert that the court can take judicial notice of the time of sunset on September 14, 2015 and that it was dark outside on that date at 8:53 p.m. Therefore, since the superseding information adequately alleges that it was dusk and because this court can take judicial notice of that fact, the instant motion should be denied.
It is well settled that an accusatory instrument must contain facts of an evidentiary nature that support or tend to support the crimes charged (CPL 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]) and contain nonhearsay allegations that establish, if true, every element of the crimes charged (CPL 100.40 [1] [c]). Further, an accusatory instrument must provide reasonable cause to believe that the defendant committed the crimes charged. (CPL 100.40 [1] [b]; Dumas, 68 NY2d 729.) Reasonable cause to believe that a defendant committed the crimes charged “exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that *988 such person committed it.” (CPL 70.10 [2].) “In order for the reasonable cause standard to be met, the factual portion of the accusatory instrument must describe conduct that constitutes the crime charged.” (People v Hightower, 18 NY3d 249, 254 [2011].)
In reviewing an accusatory instrument for facial sufficiency, the court must assume the truth of the factual allegations and consider all favorable inferences drawn therefrom. (CPL 100.40, 100.15; People v Mellish, 4 Misc 3d 1013[A], 2004 NY Slip Op 50869[U] [Crim Ct, NY County 2004].) The facts alleged need only establish the existence of a prima facie case, even if those facts would be insufficient to establish guilt beyond a reasonable doubt. (People v Jennings, 69 NY2d 103 [1986].) “The law does not require that the information contain the most precise words or phrases most clearly expressing the charge, only that the crime and the factual basis therefor be sufficiently alleged.” (People v Sylla, 7 Misc 3d 8, 10 [App Term, 2d Dept, 2d & 11th Jud Dists 2005].) As such, “[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” (People v Casey, 95 NY2d 354, 360 [2000].)
A person is guilty of criminal trespass in the third degree when “he knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders.” (Penal Law § 140.10 [a].) A person is guilty of trespass when “he knowingly enters or remains unlawfully in or upon premises.” (Penal Law § 140.05.) Penal Law § 140.00 (5) provides in pertinent part that
“[a] person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.”
The New York City Department of Parks and Recreation Rules and Regulations provide that “[p]ersons may enter and use the parks from 6:00 a.m. until 1:00 a.m. unless other open hours are posted at any park.” (56 RCNY 1-03 [a] [1].) Accord *989 ing to the superseding information, Mott Playground closes at dusk. However, neither the Penal Law nor the New York City Department of Parks and Recreation Rules and Regulations defines the term “dusk.”
The issue presented is whether the deponent officer’s allegation that the sun had set and nightfall had begun adequately alleges that it was after dusk when defendant was observed in the park. This court finds that it does not.
In Crayton, 43 defendants were charged with unlawful assembly and trespass for being in Clove Lakes Park in Richmond County after dusk. The accusatory instruments simply alleged in pertinent part that the defendants were observed in the park on February 10, 2008 at approximately 1730 hours. In dismissing the trespass charges, the court found that the accusatory instruments failed to specify how the deponent officer concluded that 1730 hours was in fact after dusk or even after sunset.
The astronomical terms “sunset,” “twilight,” and “dusk” have very precise, technical definitions. According to the United States Naval Observatory, “[s] unrise and sunset conventionally refer to the times when the upper edge of the disk of the Sun is on the horizon.” (Astronomical Applications Department of the United States Naval Observatory, Rise, Set and Twilight Definitions, http://aa.usno.navy.mil/faq/docs/RST_defs.php [accessed Mar. 14, 2016].) Merriam-Webster’s Dictionary defines “dusk” as “the darker part of twilight especially at night.” (Merriam-Webster Online Dictionary, dusk [http:// www.merriam-webster.com/dictionary/dusk] [accessed Mar. 14, 2016].)
Generally speaking, “twilight” is the time before sunrise and after sunset, in which the atmosphere is partially illuminated by the sun, being neither totally dark or completely lit.” (National Weather Service, Definitions of Twilight, http:// www.weather.gov/fsd/twilight [accessed Mar. 14, 2016].) As correctly noted by defendant, there are three stages of dusk, i.e, civil dusk, nautical dusk, and astronomical dusk. Each stage of dusk marks the end of the corresponding stage of twilight.
“Evening civil twilight begins at sunset, and ends when the geometric center of the sun is 6 degrees below the horizon.” (National Weather Service, Definitions of Twilight, http:// www.weather.gov/fsd/twilight [accessed Mar. 14, 2016].) Dusk or civil dusk is “the time at which the sun is 6 degrees below the horizon in the evening.” (National Weather Service, Glos *990 sary, http://forecast.weather.gov/glossary.php?word=DUSK [accessed Mar. 14, 2016].) Thus, civil dusk marks the end of civil twilight in the evening. During civil dusk and under good weather conditions, “objects are distinguishable but there is no longer enough light to perform any outdoor activities.” (Id.)
Nautical twilight “ends in the evening, when the geometric center of the sun is 12 degrees below the horizon.” (National Weather Service, Definitions of Twilight, http:// www.weather.gov/fsd/twilight [accessed Mar. 14, 2016].) During nautical twilight and under good weather conditions, “outlines of terrestrial objects may still be discernible, but detailed outdoor activities are likely curtailed without artificial illumination.” (Id.)
Astronomical twilight occurs “when the geometric center of the sun is 18 degrees below the horizon.” (Id.) During astronomical twilight and under good weather conditions, “sky illumination is so faint that most casual observers would regard the sky as fully dark, especially under urban or suburban light pollution.” (Id.)
Contrary to the People’s assertions, the fact that the sun had set does not necessarily mean that it was dusk. There is a period of time where the sun has set, but it is not yet dusk, namely, civil twilight. This court agrees with the Crayton court that, based upon the technical definition of dusk or civil dusk, it would be unreasonable for a police officer in a park to determine the solar elevation angle in order to assess whether defendant was in the park after it was closed. “However, a police officer could delineate whether terrestrial objects are clearly distinguished under good weather conditions, or if artificial illumination is required to carry on outdoor activities.” (Crayton, 2008 NY Slip Op 50937[U], *4.) No such allegations are alleged.
Equally problematic is the deponent officer’s use of the term “nightfall.” The term “nightfall” is defined as “the close of the day: dusk.” (Merriam-Webster Online Dictionary, nightfall [http://www.merriam-webster.com/dictionary/nightfall] [accessed Mar. 14, 2016].) “Nightfall” is a synonym for dusk. Essentially, the deponent officer has concluded that it was after dusk because dusk had begun. The deponent officer cannot allege that it was after dusk by stating that nightfall had begun.
While this court could take judicial notice of the time of dusk on September 14, 2015 in the Bronx by referring to outside sources such as the Astronomical Applications Department of *991 the United States Navy, this would have no bearing on whether the deponent officer set forth a sufficient basis for her conclusion that it was dusk. According to the superseding information, the deponent officer did not have the benefit of looking up the precise time at which dusk occurred on that date. Rather, she concluded that it was after dusk because the sun had set and nightfall had begun.
Based on the foregoing, this court finds that the People have failed to allege a sufficient basis for the deponent officer’s conclusion that it was after dusk. Since the superseding information fails to adequately allege that defendant was in the park after dusk, the superseding information fails to provide reasonable cause to believe that defendant entered or remained in the park unlawfully.
Dismissal of counts one and three due to the People’s failure to adequately allege that defendant was in Mott Playground after dusk also supports dismissal of count two (56 RCNY 1-03 [a] [3]). “[W]here the court detects reasons for facial insufficiency, it may dismiss the action for those reasons, despite the fact that the defendant did not raise those issues in his motion papers.” (People v Rosado, 192 Misc 2d 184, 185 [Crim Ct, NY County 2002], citing People v Lugo, NYLJ, Dec. 14, 1998 at 30, col 5 [Crim Ct, Bronx County 1998].) 56 RCNY 1-03 (a) (3) provides that “[n]o person shall enter or remain in any park without the permission of the Commissioner when such park is closed to the public.” Since the superseding information fails to demonstrate that it was after dusk when defendant was in the park, it cannot be said that the park was closed.
Accordingly, defendant’s motion to dismiss counts one and three, Penal Law § 140.10 (a) and Penal Law § 140.05, respectively, as facially insufficient is granted. This court sua sponte dismisses count two, 56 RCNY 1-03 (a) (3), as facially insufficient. This court directs sealing to be stayed for 30 days from the receipt of this decision and order. The People are granted leave to move to amend or otherwise cure the defects in the accusatory instrument consistent with CPL 30.30 and 170.30.