■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v HERBERT HARRIS, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT LEE, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT LEE, Appellant. [706 NYS2d 392] —Order, Supreme Court, New York County (Arlene Silverman, J.), entered October 8, 1997, which set aside the jury verdict convicting defendant Harris of robbery in the first degree and robbery in the second degree and dismissed the indictment against him, unanimously reversed, on the law, the indictment and verdict reinstated, and the matter remanded for further proceedings. Order, same court and Justice, entered October 8, 1997, which set aside the jury verdict convicting defendant Lee of robbery in the second degree and dismissed count two of the indictment against him, unanimously reversed, on the law, count two of the indictment and the verdict thereon reinstated, and the matter remanded for further proceedings. Judgment, same court and Justice, rendered October 8, 1997, convicting defendant Lee, after a jury trial, of robbery in the first degree, and sentencing him, as a second felony offender, to a determinate term of 14 years, unanimously affirmed.

The trial court erred in setting aside the verdict against defendant Harris and the second-degree robbery conviction against defendant Lee. Viewing the evidence in a light most favorable to the People and giving them all reasonable inferences that could be drawn in their favor, a " 'community of purpose' " (*People v Allah*, 71 NY2d 830, 832), as well as Harris's full knowledge of Lee's intentions, were evidenced by Harris's actions of entering the cab with Lee after Lee called him over, standing nearby as the crime took place (*see, Matter of Devin R.*, 254 AD2d 221, 222), throwing a rock at the cab's

window, fleeing into the same location as Lee and then walking with him after the crime, whereupon defendants were arrested by the police (*see also, People v Cabey*, 85 NY2d 417; *People v Burrell*, 236 AD2d 240). The fact that Harris changed his clothes during the 10 minutes between the commission of the crime and his arrest also evidenced a consciousness of guilt (*see, People v Torres*, 179 AD2d 696, *lv denied* 79 NY2d 1008).

Since the evidence provided a basis from which to infer that Harris acted as a lookout, in addition to proving that Harris acted in concert with Lee, it also proved that Harris was "actually present," supporting his conviction of robbery in the second degree (Penal Law § 160.10 [1]; *see, People v Taylor*, 203 AD2d 77, *lv denied* 83 NY2d 915). Because the evidence sufficed to establish that Harris acted as Lee's accomplice and aided him in committing the robbery while actually present, it was also sufficient to establish that Lee committed robbery in the second degree.

Nor does Lee's challenge to the complainant's in-court identification of him warrant reversal of the judgment against him. The accuracy of an eyewitness identification is an issue particularly within the province of the jury (*see, People v Mosley*, 112 AD2d 812, 813-814, *affd* 67 NY2d 985). While it was arguable that his identification of defendant Lee was based on a recollection of Lee's appearance at a prior trial (which ended in a mistrial), rather than on his recollection of the appearance of the perpetrator at the time of the robbery, the issue was fully explored during cross-examination of the complainant. And, although there were some inconsistencies in the complainant's testimony of whether Lee's appearance had changed from the time of the earlier trial, other testimony confirmed that Lee had changed his appearance between the two trials.

There was no uncertainty or confusion in the testimony that the complainant had identified defendant Lee when he spotted Lee on the street 10 minutes after the robbery, and it is undisputed that Lee's appearance at that time matched the description previously provided by the complainant.

The remainder of defendant Lee's arguments challenging the reliability of the complainant's in-court identification of him merely serve to undermine the weight of the identification, which is primarily an issue for the jury to resolve (*see, People v Gaimari*, 176 NY 84, 94; *People v Mosley*, 112 AD2d 812, *affd* 67 NY2d 985, *supra*). The jury's decision to credit the testimony of the prosecution witnesses must be accorded great weight on appeal (*see, People v Young*, 225 AD2d 339, *lv denied* 88 NY2d 971; *People v Patterson*, 155 AD2d 363).

Finally, the court properly exercised its discretion in controlling the nature and extent of the cross-examination (*see, People v Melcherts*, 225 AD2d 357, *lv denied* 88 NY2d 881). It permitted cross-examination of the complainant over a period of two days, including extensive questioning into his reliability and credibility. However, when the questioning became confusing, redundant or irrelevant, the court properly curtailed the examination (*see, People v Bedell*, 233 AD2d 518, *lv denied* 89 NY2d 1088).

Defendants' remaining protestations of error and assertions of a failure of proof are also without merit. Concur—Williams, J. P., Wallach, Saxe and Buckley, JJ.